UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DUCKY LTD.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>IVILIIA MILLIONIC IT SP. Z O.O.,<br><br>　　　　Defendant. | Case No. 24-cv-02268-PHK<br><br>**ORDER GRANTING MOTION SEEKING REFERENCE OF QUESTIONS TO THE U.S. COPYRIGHT OFFICE (17 U.S.C. § 411(B)(2))**<br><br>Re: Dkt. No. 37 |

　　　　This is a copyright case. Now before the Court is Plaintiff Ducky, LTD's ("Ducky") *ex parte* motion seeking an Order from this Court referring certain questions to be sent to the U.S. Copyright Office pursuant to 17 U.S.C. § 411(b)(2). [Dkt. 37]. Ducky has not requested oral argument on this motion, and the Court finds this dispute appropriate for resolution without oral argument. Civil L. R. 7-1(b). After carefully considering the submissions and applicable legal standards, the Court **GRANTS** Plaintiff Ducky's *ex parte* motion [Dkt. 37].

## BACKGROUND

　　　　The following facts are either uncontested or, if contested, viewed in the light most favorable to Defendant Iviliia, the non-moving party. Plaintiff Ducky is a "Cyprus-formed limited company with its principal place of business in Limassol, Cyprus." [Dkt. 1 at 3]. Plaintiff Ducky avers it "owns all rights and interests to the mobile application game, Melon Sandbox (the 'Game'), including all copyrights to the Game and all copyrights to the underlying artwork and other elements of the Game." [Dkt. 1 at 2]. Plaintiff Ducky avers that "[s]ince its release, the Game has been downloaded more than 70 million times on the Google Play Store and more than 22 million times

1   on the Apple App Store." *Id.* at 6.

2   "Defendant Iviliia [] is a Polish private limited liability company" with its principal place of business in Warsaw, Poland. [Dkt. 1 at 3; Dkt. 13 at 6]. Plaintiff Ducky alleges that Defendant Iviliia fraudulently registered copyrights to the Game and "used these fraudulently obtained copyright registrations to extort settlement payments and licensing fees from third parties who had published derivative works based on the Game." *Id.* at 2. Defendant Iviliia has submitted a copyright violation notice to Google and Apple pursuant to the Digital Millennium Copyright Act ("DMCA"), which Plaintiff Ducky likewise claims to be fraudulent. [Dkt. 1 at 9–10; Dkt. 13 at 93–113]. Plaintiff Ducky further alleges that Defendant Iviliia "sought to fraudulently register trademarks to the Game." [Dkt. 1 at 2].

Plaintiff Ducky alleges that after contacting Defendant Iviliia regarding the alleged misconduct, Defendant Iviliia "falsely claimed that it was trying to protect Plaintiff's rights." *Id.* at 2. After Plaintiff Ducky sought clarification, Defendant Iviliia allegedly ceased communications with Plaintiff Ducky. *Id.*

On April 16, 2024, Plaintiff Ducky filed the instant lawsuit against Defendant Iviliia seeking declaratory relief, including declarations that: (1) Defendant filed fraudulent copyright registrations in the Game; (2) Plaintiff has not committed copyright infringement with regard to Defendant's allegedly fraudulent copyright registrations; (3) Defendant fraudulently filed trademark registrations in marks relating to the Game; and (4) Plaintiff is the rightful owner of copyrights in the Game (and the characters and artwork in the Game). *Id.* at 11–12.

## LEGAL STANDARD

Section 411 of the Copyright Act sets forth provisions regarding the filing of inaccurate information in a copyright registration:

> (1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless—
>
> (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
>
> (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.
>
> (2) In any case in which inaccurate information described under paragraph (1) is

> alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration."

17 U.S.C. § 411(b)(1)–(2).

Under this statute, a certificate of copyright registration which contains inaccurate information can therefore be held invalid (*i.e.*, the registration does not satisfy the requirements of §§ 411 and 412 of the Copyright Act) if that inaccurate information was included with knowledge of its inaccuracy and, if the Register of Copyright had known of the inaccuracy, that would have resulted in refusal of the registration. However, "[t]he law is unsettled regarding what evidentiary burden a movant must meet to satisfy the conditions of § 411(b)(1)." *Williams v. Hy-Vee, Inc.*, 661 F. Supp. 3d 871, 887 (S.D. Iowa 2023). "Courts of Appeals are split on whether § 411(b)(1)(A)'s 'knowledge' element requires indicia of fraud." *Williams*, 661 F. Supp. 3d at 887 (citing *Roberts v. Gordy*, 877 F.3d 1024, 1029 (11th Cir. 2017) (holding § 411(b) "codifies the defense of Fraud on the Copyright Office"); *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, L.L.C.*, 925 F.3d 1140, 1147 (9th Cir. 2019) (reversed on other grounds) (finding § 411(b) "does not require a showing of fraud")). The Supreme Court has not resolved this precise issue. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 595 U.S. 178, 188 (2022) (acknowledging the Court was not deciding whether invalidation of a copyright registration under § 411(b) required a showing of fraudulent intent).

The literal language of Section 411(b) does not use the word "fraud" but rather speaks to "knowledge" of the inaccuracy in the copyright registration sought to be invalidated. The Supreme Court has instructed that, in the context of § 411(b)(1), "the word 'knowledge' means actual, subjective awareness of both the facts and the law." *Unicolors, Inc.*, 595 U.S. at 185. "[W]illful blindness may support a finding of actual knowledge" within the meaning of Section 411(b)(1)(A). *Id.* "Circumstantial evidence, including the significance of the . . . error, the complexity of the relevant rule, the applicant's experience . . . and other such matters, may also lead a court to find that an applicant was actually aware of, or willfully blind to, legally inaccurate information." *Id.*

Under Section 411(b)(2), the statutory scheme requires that a court "request the Register of Copyrights to advise the court whether" the Register of Copyrights would have refused the copyright

3

registration in question in the first instance, if the inaccuracy of the information had been known at the time. The statutory scheme does not expressly set forth the evidentiary burden on a movant sufficient to warrant a court exercising this authority and referring questions to the Copyright Office. Thus, "courts are free to decide when a sufficient factual record exists such that referral would be fruitful." *Lieb v. Korangy Publ'g, Inc.*, No. CV 15-0040 (AYS), 2022 WL 1124850, at *12 (E.D.N.Y. Apr. 14, 2022) (citing *King-Devick Test Inc. v. NYU Langone Hosps.*, No. 17-CV-9307 (JPO), 2019 WL 3071935, at *10 (S.D.N.Y. July 15, 2019)). Courts have the discretion to require a movant to "*demonstrate* that (1) the registration application included inaccurate information; and (2) the registrant knowingly included the inaccuracy in his submission to the Copyright Office" as a prerequisite for the court's seeking advice from the Copyright Office under Section 411(b)(2). *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 625 (7th Cir. 2013) (citing 17 U.S.C. § 411(b)(1); Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) at 12; *Olem Shoe Corp. v. Wash. Shoe Co.*, No. 1:09-cv-23494, 2010 WL 3505100, at *3 (S.D. Fla. Sept. 3, 2010)); *Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors L.P.*, 948 F.3d 261, 278 (5th Cir. 2020). Because this is a threshold showing simply to establish sufficient cause for the court to make a referral to the Copyright Office (and at this stage of the proceedings, not a request for a final determination or finding that the registration is in fact invalid due to inaccuracy), the burden on a movant is analogous to a *prima facie* showing sufficient to trigger the referral power of the court under Section 411(b)(2). That is, the statute itself makes clear that a court should not and need not require a movant to actually *prove* the two requirements of § 411(b)(1) in order to justify the request for a referral of the questions to the Copyright Office—the statute explicitly requires that alleging the inaccuracy is sufficient. *See* 17 U.S.C. § 411(b)(2) (mandatory referral is triggered where "information described under [§ 411(b)(1)] is alleged"); *Olem Shoe Corp.*, 2010 WL 3505100, at *3.

## DISCUSSION

Plaintiff Ducky requests that this Court refer two questions to the Copyright Office. [Dkt. 37]. Keeping in mind the legal standards discussed above, the Court **FINDS** that Ducky has presented sufficient evidence and allegations for this Court to conclude that this Court should

4

exercise its authority and discretion under Section 411(b)(2) and refer these questions to the Copyright Office. Plaintiff Ducky has alleged sufficient facts and provided sufficient evidence at this stage to plausibly allege and establish at least a facially adequate basis to conclude that (1) the copyright registration applications at issue included inaccurate information; and (2) the registrant (Iviliia) knowingly (or was at least willfully blind when it) included the inaccuracy in its submissions to the Copyright Office. In reviewing the allegations and evidence submitted by Ducky, the Court views the submissions in the light most favorable to Iviliia (the non-moving party) out of an excess of caution given the procedural posture of this case and the instant motion: no counsel for Iviliia has entered appearance in this case, Iviliia has not responded to the Complaint in this case (where Ducky alleges that service of process was completed under the Hague Convention, *see* Dkts. 21–22), and Iviliia has not responded to this *ex parte* motion (despite having apparently received a copy via email, *see* Dkt. 45).

First, Plaintiff Ducky has alleged sufficient facts and provided sufficient evidence to support the allegations that the registration applications at issue included inaccurate information. In support of the instant motion, Ducky not only relies on the allegations in the Complaint but also submitted multiple declarations, including declarations from the two co-creators of the Game (one of whom programmed the Game, and the other of whom created all the artwork in the Game), a declaration from Plaintiff's predecessor-in-interest in the rights to the Game (who ultimately assigned those rights to Ducky), a declaration from a current Director of Ducky, and a declaration from Polish counsel for Ducky. *See* Dkts. 39–42, 44.

Plaintiff alleges to be the sole owner of all rights and title in the Game, including all copyrights. *See* Dkt. 1 at ¶ 15; Dkt. 44 (Declaration of Irina Fihd, Director of Ducky) at ¶ 9. Defendant was not involved in the creation, development, authorship, or publication of the Game or in the artwork displayed in the Game. Dkt. 1 at ¶ 43; *see also* Dkt. 40 (Declaration of Oleg Podvalova, one of the co-creators of the Game) at ¶ 5; Dkt. 41 (Declaration of Tatyana Podvalova, the other co-creator of the Game) at ¶ 5; *see* Dkt. 42 (Declaration of Yuri Mikhailovich, previous owner of all rights in the Game) at ¶ 11; Dkt. 44 at ¶ 26. Defendant does not own any rights or interests in the Game or in the artwork displayed in the Game. Dkt. 1 at ¶¶ 44–45; Dkt. 40 at ¶ 6;

Dkt. 41 at ¶ 6; Dkt. 42 at 12; Dkt. 44 at ¶ 27. Defendant has no relationship with Plaintiff nor Plaintiff's predecessors-in-interest to Plaintiff's rights in the Game. Dkt. 1 at ¶ 46; Dkt. 40 at ¶ 9; Dkt. 41 at ¶ 9; Dkt. 42 at ¶ 15; Dkt. 44 at ¶ 9.

Indeed, the evidence that Defendant Iviliia stated that they are asserting copyrights in the Game against third parties in an unexplained attempt to somehow protect the rights of Plaintiff Ducky is significant in this respect. *See* Dkt. 39 (Declaration of Ducky's Polish counsel) at ¶ 3 (quoting email from an individual associated with Iviliia to Ducky's counsel: "We [Iviliia] are not seekng any money and are striving to eliminate your [Ducky's] competitors who use content that does not belong to them to promote unofficial copies of your product.... We have absolutely nothing against you and your product; on the contrary, we are making every effort to ensure that users can only use the official product, rather than its copies, which also affect your reputation and the quality of the product you sell.").

Furthermore, Plaintiff Ducky has alleged sufficient facts and provided sufficient evidence to support the allegations that Defendant knowingly included inaccurate information in their submissions to the Copyright Office for the copyright registrations in dispute. In the applications for the Disputed Registrations, Defendant claimed that it obtained rights in the underlying works by written agreement, but it has produced no such agreement. *Id.* at ¶ 48; *see also* Dkts. 38-1 to 38-22 (copies of Iviliia's copyright registration applications at issue). Each of the disputed copyright registrations identifies Iviliia as the "Copyright Claimant" on the basis of "Transfer: By written agreement". Dkts. 38-1 to 38-22. Defendant Iviliia admitted to Plaintiff's counsel that Iviliia was asserting copyrights in the Game against third parties somehow on behalf of Ducky. Dkt. 1 at ¶¶ 55–57; *see also* Dkt. 39 at ¶ 3 (Declaration of Ducky's Polish counsel). Defendant Iviliia has entered into licensing agreements with several third parties under which those third parties are obligated to pay Iviliia monetary fees for the licenses under the Disputed Registrations. Dkt. 1 at ¶ 52; *see also* Dkt. 39 at ¶¶ 8–11 and Dkt. 39-5 (copy of license agreement).

Based on the foregoing, the Court finds that Plaintiff Ducky has submitted sufficient allegations and evidence to demonstrate sufficient and good cause for the Court to refer to the Copyright Office the specific questions regarding the disputed copyright registrations. Accordingly,

1 the Court **GRANTS** Plaintiff Ducky's motion and will refer the questions below to the Copyright
2 Office under Section 411(b)(2).

## CONCLUSION

The Court hereby **GRANTS** Plaintiff Ducky's motion for reference of certain questions to the U.S. Copyright Office. Accordingly, pursuant to 17 U.S.C. § 411(b)(2), the Court requests the advice of the Register of Copyrights with regard to the following questions:

For purposes of the Court's questions to the Copyright Office, reference is made to twenty-two (22) U.S. Copyright Registrations issued by the United States Copyright Office to Defendant Iviliia for two-dimensional artwork featured in the Game, namely the following "Disputed Registrations":

- Ambush Mutant (VA0002355331)
- Apple hero (VA0002353215)
- Blind figure hero (VA0002355282)
- Corn hero (VA0002353217)
- Cyan mutant (VA0002355604)
- Gooey Monster (VA0002355557)
- Green Monster (VA0002355602)
- Humanoid monster hero (VA0002355283)
- Jester mutant (VA0002355339)
- Jumbo monster (VA0002355255)
- Looky Monster (VA0002355605)
- Mechanoid hero (VA0002355281)
- Melon sky background (VA0002363785)
- Orange Monster (VA0002355606)
- Pumpkin hero (VA0002353216)
- Purple Monster (VA0002355556)
- Rush monster (VA0002355327)
- Screech hero (VA0002355284)
- Stinger monster (VA0002355340)
- Toilethead hero (VA0002355338)
- Watermelon hero (VA0002353214)
- Yellow monster (VA0002355608)

*See* Dkt. 1 at ¶ 47; Dkt. 38 at ¶¶ 2–23; Dkt. 38-1; Dkt. 38-2 (copies of Copyright Registrations).

Pursuant to 17 U.S.C. § 411(b)(2), the Court requests the Register of Copyrights to advise the Court whether any or all of the information below, if known, would have caused the Register of Copyrights to refuse to register the Disputed Registrations (identified above) to Defendant Iviliia:

1. In its applications for each of the Disputed Registrations, Defendant Iviliia claimed that it obtained rights in the underlying works by written agreement, but has produced no such agreement.

2. Plaintiff Ducky is the sole owner of all rights and title in the Game, including all

7

1  copyrights.

2  3. Defendant Iviliia was not involved in the creation, development, authorship, or publication
3  of the Game or in the artwork displayed in the Game.

4  4. Defendant Iviliia does not own any rights or interests in the Game or in the artwork
5  displayed in the Game.

6  5. Defendant Iviliia has no relationship with Plaintiff Ducky nor Plaintiff's predecessors-in-
7  interest to Plaintiff's rights in the Game.

8  6. Defendant Iviliia told Plaintiff's counsel that Defendant Iviliia asserted the Disputed
9  Registrations against third parties on behalf of Plaintiff Ducky.

10  7. Defendant Iviliia has entered into multiple licensing agreements with third parties under
11  which the third parties are obligated to pay monetary licensing fees to the Disputed Registrations.

12  8. Defendant Iviliia's principal, Serhii Osadchyi, has engaged in similar actions with respect
13  to other companies. *See Invisible Narratives LLC v. Next Level Apps Tech.*, Civil Action No. 5:25-
14  cv-01644-NW (N.D. Cal.).

15  The Court **REQUESTS** that the Register of Copyrights provide its response to these
16  questions within **ninety (90) days** from the date of this Request, that is by September 2, 2025.

17  The Clerk of Court is **DIRECTED** to send a copy of this Order, along with a copy of the
18  Complaint in this action, and the instant motion with associated declarations (including exhibits),
19  dkts. 1, 37–44, to the Register of Copyrights via email to 411filings@copyright.gov. *See* 37 C.F.R.
20  § 205.14.

21  This **RESOLVES** Dkt. 37.

22  **IT IS SO ORDERED.**

23  Dated:  June 4, 2025

24  
25  _____
    PETER H. KANG
    United States Magistrate Judge