UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DUCKY LTD.,<br><br>         Plaintiff,<br><br>    v.<br><br>IVILIIA MILLIONIC IT SP. Z O.O.,<br><br>         Defendant. | Case No.  24-cv-02268-PHK<br><br>**REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT; ORDER OF REASSIGNMENT**<br><br>Re: Dkt. 51 |

**INTRODUCTION**

Plaintiff Ducky Ltd. ("Plaintiff") filed the Complaint in this action on April 16, 2024. [Dkt. 1]. On October 28, 2024, Plaintiff filed a return of summons and service of process along with a supporting declaration attesting to service of the Complaint on Defendant Iviliia Millionic IT Sp. Z O.O. ("Defendant"), based in Poland, pursuant to the Hague Convention. [Dkts. 21-22]. Defendant has never responded to the Complaint, nor has any counsel entered appearance for Defendant. Plaintiff filed the instant motion for default judgment against Defendant on October 31, 2025. [Dkt. 51]. The Court noticed and held a hearing on the motion for default judgment on December 11, 2025. [Dkt. 56].

Having reviewed and considered the motion and supporting documents, as well as the other related papers and pleadings on file herein, and finding good cause appearing, the Court issues this Report and Recommendation and Order as follows:

**RELEVANT BACKGROUND**

**A.      Plaintiff's Allegations**

Plaintiff has alleged the following in its operative Complaint [Dkt. 1]:

United States District Court
Northern District of California

Melon Sandbox, also known as Melon Playground, is a 2-D sandbox video game, in which players can create, simulate, and build nearly anything with the various objects and items provided in the Game. [Dkt. 1 at ¶ 17]. The Game contains several characters, which players can insert into the gameplay, such as Melon, Pumpkin, Corn, and Apple. [*Id.* at ¶ 18].

On October 30, 2023, Plaintiff acquired all rights and title to the Game, including all copyrights to the Game. [*Id.* at ¶ 25]. Since its release, the Game has been downloaded more than 70 million times on the Google Play Store and more than 22 million times on the Apple App Store. [*Id.* at ¶ 40]. Fans of the Game create and publish derivative works to social media websites and video-sharing websites, which Plaintiff generally encourages. [*Id.* at ¶ 42].

On October 17, 2023, Plaintiff acquired six U.S. copyright registrations covering the artwork for characters in the Game (*i.e.*, Apple, CORN, Melon, Pumpkin, ROBOT) and artwork comprising the Game's Melon Sandbox logo. [*Id.* at ¶¶ 28-33]. On February 29, 2024, Plaintiff acquired three U.S. copyright registrations covering the entirety of the Game, including all artwork comprising the Game, and the artwork for the Game's "Cactus" and "Tomato" characters. [*Id.* at ¶¶ 27, 34-35].

Additionally, Plaintiff asserts the development of rights in multiple trademarks that it uses in connection with the Game, and Plaintiff has applied for several trademark registrations with the United States Patent and Trademark Office ("PTO") for those trademarks. [*Id.* at ¶ 36]. For example, on October 17, 2023, Plaintiff applied to the PTO to register the mark "MELON SANDBOX," Serial No. 98227522, and on March 19, 2024, Plaintiff applied to the PTO to register the mark "MELON PLAYGROUND," Serial No. 98457426. [*Id.* at ¶¶ 37-38].

Defendant is a Polish-formed company based in Warsaw, Poland. [*Id.* at ¶ 11]. Defendant was not involved in the creation, development, authorship, or publication of the Game or in the artwork displayed in the Game. [*Id.* at ¶ 43]. Defendant does not own any rights or interest in the Game or to the artwork displayed in the Game, is not a licensee of any rights in the Game, and has no relationship with Plaintiff. *Id.* at ¶¶ 44-46].

Allegedly in an attempt to capitalize on the popularity of the Game, and despite having no legitimate rights or interest in the Game or its underlying artwork, in 2023 Defendant applied for and obtained at least 22 U.S. copyright registrations with the U.S. Copyright Office for artwork

2

featured in the Game (the "Disputed Registrations"). [*Id.* at ¶ 47]. Additionally, on November 30, 2023, Defendant submitted an international trademark application under the Madrid Protocol for the mark MELON SANDBOX PLAYGROUND HUMAN WORKSHOPS: RAGDOOL PEOPLE GAME, and on March 28, 2024, Defendant sought protection for that mark with the U.S. PTO, Application Serial Number 79/392,571. [*Id.* at ¶¶ 6, 62-63].

Beginning in or around October or November 2023, Defendant began using its Disputed Registrations to seek settlement payments and licensing fees from third parties who had published derivative works based on the Game. [*Id.* at ¶ 50]. To accomplish the receipt of these payments from third parties, Defendant submitted takedown notices under the Digital Millennium Copyright Act, 17 U.S.C. § 512 ("DMCA") regarding these third parties' supposedly infringing content. [*Id.* at ¶ 51]. Defendant then demanded either payment of a settlement fee from the third party or Defendant indicated that it would allow reinstatement of the supposedly infringing content in exchange for an ongoing licensing fee from the third party. [*Id.* at ¶ 52].

In addition to actions against third parties, Defendant submitted DMCA takedown requests to Apple and Google demanding the removal of the Game from the Apple App Store and the Google Play Store. [*Id.* at ¶ 55]. Plaintiff submitted counter-notifications under the DMCA to reinstate the Game in these mobile application stores. *Id.*

When Plaintiff reached out to Defendant about Defendant's actions complained of here, Defendant claimed that it was only trying to protect Plaintiff's rights by making demands to third parties. [*Id.* at ¶ 56].

**B.    Procedural Background in This Court**

Plaintiff filed its Complaint on April 16, 2024 asserting a single cause of action for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. [Dkt. 1]. The Court issued a Summons to Defendant on April 19, 2024. [Dkt. 7]. Plaintiff filed a return of executed summons and declaration on October 28, 2024, which attest that Plaintiff served Defendant with the Complaint and Summons on July 24, 2024, under Federal Rule of Civil Procedure 4(f)(1) and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"). [Dkts. 21-22]. Specifically, according to the Hague Convention materials submitted

to the Court, the Regional Court of Warsaw Poland, the Central Authority-designee for Poland under Article 18 of the Hague Convention, served Defendant with process by a method prescribed by Polish law for the service of documents in domestic actions upon persons who are within its territory under Article 5 of the Hague Convention.  [Dkt. 22 at 2; Dkt. 22-2 at 2 (English translation of Dkt. 22-1)].

The Clerk of the Court entered default against Defendant on November 6, 2024. [Dkt. 26.]

**C.      Referral to the U.S. Copyright Office**

Because the operative Complaint asserts that Defendant's copyright registrations of the Disputed Registrations are invalid, on March 21, 2025, Plaintiff filed a Motion for Order Referring Issue of Copyright Validity to U.S. Copyright Office under 17 U.S.C. § 411(b).  [Dkt. 37].  On June 4, 2025, the Court granted Plaintiff's motion to refer specific matters to the U.S. Copyright Office under the procedures set forth by and as required by 17 U.S.C. § 411(b).  [Dkt. 46].  Under Section 411(b), the Court ordered the submission of specific questions to the Copyright Office in order to advise the Court on whether the allegedly inaccurate information provided by Defendant, if known to the Copyright Office at the time of registering the Disputed Registrations, would have caused the Register of Copyrights to refuse the registrations.  *Id*.

On September 2, 2025, the Copyright Office submitted its response to the Order of reference, in which the Copyright Office stated as follows:

> Based on a review of the relevant law, regulations, and the Copyright Office's practices, the Office hereby advises the Court that had it known that Iviliia did not own any rights or interests in the Game or in the artwork displayed in the Game as of the date a particular application for a Disputed Registration was received in the Office (or if the Office had known that Iviliia owned any fewer than all the exclusive rights as of that date), Iviliia would not qualify as a claimant and the Office would have refused to register that work with Iviliia named as the copyright claimant.

[Dkt. 47-1 at 12.]

**D.      Polish Legal Proceedings and Ongoing Conduct**

On April 5, 2024, Plaintiff initiated a civil action in the Regional Court of Warsaw, Poland seeking an injunction against Defendant. [Dkt. 53 at ¶ 14]. On September 9, 2024, the Regional Court of Warsaw issued a Decision and Injunction against Defendant, enjoining Defendant from: a)

United States District Court
Northern District of California

4

attempting to block the Game on the Apple App Store and the Google Play Store, b) attempting to block videos of the Game on YouTube, and c) impersonating the owner of the copyrights to the Game. *Id.* at ¶ 14 & Ex. J.

Following the issuance of the Polish injunction, Plaintiff avers that Defendant has continued to misuse Plaintiff's copyrights in the Game to extort settlements from third parties. *Id.* at ¶¶ 7-11 & Exs. D-H.

As of the date of this Report and Recommendation, no counsel has entered appearance for Defendant, Defendant has not responded to the Complaint, and no counsel appeared at any of the noticed hearings in this case (including the hearing on the instant motion for default judgment).

**LEGAL STANDARDS**

Federal Rule of Civil Procedure 55(b) allows the Court to enter a default judgment where the defaulting party has "failed to plead or otherwise defend," and the Clerk has entered the party's default. *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1005 (C.D. Cal. 2014); Fed. R. Civ. P. 55. "Once a party's default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party." *Vogel*, 992 F. Supp. 2d at 1005 (citing Fed. R. Civ. P. 8(b)(6)).

**DISCUSSION**

**A.      This Court has jurisdiction to enter default judgment.**

In a motion for default judgment, the Court must determine whether it may properly exercise both subject matter jurisdiction and personal jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Well-pleaded jurisdictional allegations are taken as admitted on a motion for default judgment. *See Matter of Visioneering Const.*, 661 F.2d 119, 124 (9th Cir. 1981).

Subject Matter Jurisdiction. The Complaint asserts that jurisdiction is proper "under 28 U.S.C. § 1331 and 28 U.S.C. § 2201 because this action concerns Plaintiff's ownership of copyrights and Defendant's fraudulent registration and misuse of copyrights and trademarks." [Dkt. 1 at ¶ 12]. A lawsuit seeking federal declaratory relief must: (1) satisfy statutory jurisdictional prerequisites and (2) present an actual case and controversy within the meaning of Article III, section 2 of the United States Constitution. *See Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222-23 (9th Cir.

United States District Court
Northern District of California

5

1998). If the suit passes constitutional and statutory muster, the Court must also be satisfied that entertaining the action is appropriate. *See id.* at 1223.

Here, an actual case or controversy exists between the Parties regarding federal questions that are appropriately resolved by this Court.  First, an actual case and controversy exists between Plaintiff and Defendant as to: a) the ownership of the copyrights in the Game, b) whether Plaintiff has infringed Defendant's purported copyrights in the Game, c) whether Defendant has sent fraudulent DMCA takedown notices to Apple and Google regarding the Game, and d) whether Defendant has sent demand letters and sham license agreements to third parties, claiming that Defendant owns valid copyrights to the Game. Second, these issues present federal questions that amount to more than a naked declaration of copyright ownership.

Finally, there are no factors weighing against the Court's exercising its discretion to grant declaratory relief.

Personal Jurisdiction. The Complaint alleges that personal jurisdiction over Defendant is proper "because Defendant committed the intentional acts described herein, expressly aimed those acts at California, and caused harm that Defendant knew was likely to be suffered in California." [Dkt. 1 at ¶ 13].  This is a pleading of specific personal jurisdiction.  The Ninth Circuit has "established a three-prong test for analyzing a claim of specific personal jurisdiction." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). First, the non-resident defendant must have purposefully directed its activities at the forum. *See id.* Second, the claim must be one which arises out of or relates to the defendant's forum-related activities. *See id.* Third, the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable. *See id.*

For suits sounding in tort, the Ninth Circuit has applied a distinct "purposeful direction analysis." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020). Specifically, the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 1209 (citing *Calder v. Jones*, 465 U.S. 783 (1984)); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Copyright infringement claims are treated as tort-like for personal jurisdiction purposes, and

United States District Court
Northern District of California

6

so purposeful direction provides the appropriate analytical framework. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011).

Here, accepting the allegations in the Complaint as true, Defendant purposefully directed activities toward California, and Plaintiff's cause of action arises out of that conduct. Specifically, Defendant sent the complained-of DMCA takedown notices to Apple and Google, both of which are based in California. [Dkt. 1 at ¶ 55]. The takedown notices resulted in the temporary removal of the Game from the Apple App Store and the Google Play Store (resulting in harm to Plaintiff) until Plaintiff submitted to Apple and Google (again both based in California) DMCA counternotices and until Apple and Google processed those counternotices. *Id.*

Moreover, the exercise of personal jurisdiction is reasonable because Defendant sent the complained-of DMCA notices (which are alleged to be fraudulent) to effectively defraud Apple and Google in California, and there is nothing in the record showing that the exercise of jurisdiction would be unreasonable under the circumstances.

Finally, to the extent a Disputed Registration was not identified in Defendant's complained-of DMCA takedown notices, that does not obviate the fact all of the claims in the Complaint arise out of a common nucleus of operative facts and therefore the Court's exercise of personal jurisdiction over Defendant is appropriate with respect to claims stemming from Disputed Registrations which are not explicitly listed in the DMCA takedown notices. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004) (district court has discretion to exercise pendent personal jurisdiction; noting that "When a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts.").

It is further worth noting that the Complaint asserts one single cause of action (for declaratory relief) and Plaintiff has not pled different causes of action for different Disputed Registrations. In that regard, because the Complaint alleges sufficient facts to support specific personal jurisdiction over Defendant with regard to at least some of the Disputed Registrations, the fact that there exist other Disputed Registrations which were not listed in the DMCA takedown notices does not deprive the Court of personal jurisdiction over Defendant.

United States District Court
Northern District of California

**B.      The *Eitel* factors weigh in favor of granting the motion for default judgment.**

The Ninth Circuit has set forth several factors for courts to consider in exercising discretion as to the entry of a default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). These factors include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id.* at 1471-72. In this case, the *Eitel* factors weigh in favor of granting default judgment against Defendant.

First, without default judgment, Plaintiff will be prejudiced because Defendant has continued its complained-of conduct after the filing of this suit, after the filing of the Polish lawsuit, and even after the Polish court issued its injunction.

The second and third *Eitel* factors consider the merits and sufficiency of a plaintiff's claims and are often analyzed together.  Here, Plaintiff has established the substantive merits of its claim and the sufficiency of the Complaint by alleging a viable claim under the Federal Declaratory Judgment Act that a substantial case and controversy exists warranting a declaratory judgment that Defendant improperly applied for, secured, and used the Disputed Registrations to Plaintiff's detriment.  More specifically, the Court notes that the response from the Copyright Office further supports the substantive merits of Plaintiff's cause of action against Defendant, because the Copyright Office's response establishes that, had the Copyright Office known the previously undisclosed facts concerning Defendant's lack of ownership rights to seek the registrations, Defendant's Disputed Registrations would have been refused.  [Dkt. 47-1 at 8-12].  Here, Plaintiff has demonstrated the existence of "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Spokane Indian Tribe v. United States*, 972 F.2d 1090, 1092 (9th Cir. 1992) (citation omitted). "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving

United States District Court
Northern District of California

rise to the proceeding." *McGraw–Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966) (citation omitted).  Here, Plaintiff has demonstrated that a declaratory judgment would be useful in clarifying the proper ownership of the Disputed Registrations and would afford relief from the uncertainty and controversy here caused by Defendant's assertion of the Disputed Registrations to harm Plaintiff (and against third parties).  The circumstances here support this Court's exercise of its "sound discretion" to decide that a declaratory judgment is warranted.  *Id.*

Fourth, weighing the amount of money at stake in comparison with the seriousness of Defendant's conduct, the fact that Plaintiff is not seeking any monetary damages, but only attorney's fees and costs, weights in favor of default judgment.  *See Vietnam Reform Party v. Viet Tan – Vietnam Reform Party*, 416 F. Supp. 3d 948, 970 (N.D. Cal. 2019) (in trademark case, under fourth *Eitel* factor, "[b]ecause Plaintiff is not seeking any monetary damages and only attorneys' fees and costs, this factor weighs in favor of default judgment.") (citing *Elec. Frontier Found. v. Glob. Equity Mgmt. (SA) Pty Ltd.*, 290 F. Supp 3d 923, 947 (N.D. Cal. 2017); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176-77 (C.D. Cal. 2002)).

The fifth *Eitel* factor concerns the possibility of a dispute as to any material facts in this case.  Here, for the reasons discussed above, Plaintiff has filed a well-pled Complaint alleging a single cause of action for declaratory judgment.  Defendant has not challenged the Complaint by answer, motion, or otherwise despite having been provided formal and informal notice of this action and the various hearings (and, based on the record presented, Defendant appears not to have attempted to dispute the facts in the parallel Polish lawsuit).  In these circumstances, this factor supports granting the motion for default judgment.  *See Vietnam Reform Party*, 416 F. Supp. 3d at 970 ("Even if there was a possibility that Defendants could dispute Plaintiff's allegations, that would not change the Court's analysis for present purposes because Defendants have not appeared to rebut the allegations.").

The sixth *Eitel* factor concerns the potential that a defendant has defaulted due to excusable neglect.  Here, Defendant was served the summons and Complaint under Polish law in compliance with the Hague Convention.  [Dkt. 22-1].  Plaintiff's counsel has submitted a declaration attesting that Plaintiff sent a copy of all the moving papers for the instant Motion for Default Judgment to the

United States District Court
Northern District of California

email addresses known to have been used by Defendant. *See* Dkt. 52 at 2. Earlier in this case, Plaintiff filed a motion for default judgment which was withdrawn (to allow for the reference of questions to the Copyright Office) and, in connection with that withdrawn, earlier motion for default judgment, Plaintiff's counsel submitted a declaration attesting that copies of the papers filed in connection with that later-withdrawn motion for default judgment were similarly sent by email to email addresses known to have been used by Defendant. *See* Dkt. 30-1 at 2. Defendant has not entered appearance through counsel and has not responded to Plaintiff's Complaint or the instant motion. Because there is nothing in the record to conclude that Defendant's failure to defend this action is due to excusable neglect, this factor weighs in favor of granting default judgment.

Finally, default judgment is warranted despite the policy of deciding cases on their merits because Defendant was properly served with the Complaint and put on notice of the lawsuit and then voluntarily chose not to defend itself. Here, resolving this case on the merits is not possible if the Defendant fails to participate in the litigation at all – there is no way to push the case to resolution on the merits without participation of all Parties. Accordingly, while this factor marginally disfavors granting default judgment, that weight is not significant especially in comparison with the other *Eitel* factors.

In light of the discussion above, the *Eitel* factors taken as a whole weigh in favor of granting default judgment against Defendant.

### C.     The Court recommends granting declaratory relief.

Declaratory judgment is justified because Plaintiff has alleged facts demonstrating a substantial controversy between Plaintiff and Defendant concerning the copyrights in the Game. Moreover, Plaintiff has alleged facts demonstrating that it is the owner of the copyrights in the Game, that Defendant fraudulently registered copyrights in the Game, and that Defendant submitted fraudulent DMCA takedown notices to Apple and Google regarding the Game.

The Court has both the authority to invalidate Defendant's Disputed Registrations and to declare Plaintiff the sole and exclusive owner of appropriate copyrights in the Game as between Plaintiff and Defendant. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1067 (9th Cir. 2022); *Edward B. Marks Music Corp. v. Charles K. Harris Music Pub. Co.*, 255 F.2d 518,

United States District Court
Northern District of California

520 (2d Cir. 1958).

Because declaratory judgment will clarify the invalidity of Defendant's copyright registrations and the invalidity of Defendant's claims of infringement, the undersigned recommends granting the following declaratory relief as part of the default judgment:

1.      That Plaintiff is the rightful owner in its copyrights in the Game and to the characters and artwork in the Game;

2.      That Defendant does not own any valid copyrights in the Game, or to any artwork or other elements in the Game; and

3.      That Plaintiff does not infringe and has not infringed on Defendant's claimed copyrights to any artwork or other elements in the Game, including the Disputed Registrations.[1]

4.      Defendant's registrations for the following copyright registrations for any artwork or other elements in the Game are invalid:

- Ambush Mutant (VA0002355331)
- Apple hero (VA0002353215)
- Blind figure hero (VA0002355282)
- Corn hero (VA0002353217)
- Cyan mutant (VA0002355604)
- Gooey Monster (VA0002355557)
- Green Monster (VA0002355602)
- Humanoid monster hero (VA0002355283)
- Jester mutant (VA0002355339)
- Jumbo monster (VA0002355255)
- Looky Monster (VA0002355605)
- Mechanoid hero (VA0002355281)
- Melon sky background (VA0002363785)
- Orange Monster (VA0002355606)
- Pumpkin hero (VA0002353216)
- Purple Monster (VA0002355556)
- Rush monster (VA0002355327)
- Screech hero (VA0002355284)
- Stinger monster (VA0002355340)
- Toilethead hero (VA0002355338)
- Watermelon hero (VA0002353214)
- Yellow monster (VA0002355608)

---

[1] Plaintiff no longer seeks a declaratory judgment that Defendant's trademark application contains knowing and material misrepresentations, Dkt. 1 at Prayer ¶7, because the PTO has denied that application.

United States District Court
Northern District of California

**D.    The Court recommends granting injunctive relief.**

Plaintiff requests that the Court grant various injunctive relief. [Dkt. 1 at 12]. The Court recommends granting injunctive relief.

Under the Copyright Act, a court is authorized to grant a permanent injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). A plaintiff must show that it is entitled to a permanent injunction by demonstrating: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiff has satisfied these requirements.

First, irreparable harm exists here because Defendant's illegal acts have harmed Plaintiff, and if Defendant is not enjoined, Defendant will likely continue to harm Plaintiff in the form of continued misuse of invalidly secured copyrights. Second, legal remedies are inadequate because Defendant has not shown an ability or willingness to pay monetary damages, including Plaintiff's requested attorney's fees, and because Defendant has continued the complained-of conduct during this lawsuit and the Polish lawsuit. Third, the proposed injunction serves the narrow purpose of preventing Defendant's further infringement and misuse of copyrights to the detriment of Plaintiff's rights in copyrights for the Game. Because Defendant does not own valid copyrights (and because the Copyright Office has confirmed that the Disputed Registrations would have been refused had Defendant's lack of ownership rights been known), there would be no harm to Defendant by issuing an injunction which enjoins Defendant from undertaking actions it has no legal basis to undertake. Balanced against the ongoing harm to Plaintiff, the lack of prejudice to Defendant demonstrates that this factor favors granting an injunction.

Finally, a narrowly tailored permanent injunction serves no purpose other than to vindicate the legitimate rights of Plaintiff in its copyrights and thus is consistent with public policy. The Constitution enshrines the power of Congress to grant copyrights, and the Supreme Court long ago

12

recognized that "[t]he economic philosophy behind the clause empowering Congress to grant patents and copyrights is the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors in 'Science and useful Arts.'" *Mazer v. Stein*, 347 U.S. 201, 219 (1954).  As such, courts have recognized "the public policy embedded in the grant of a copyright." *Shloss v. Sweeney*, 515 F. Supp. 2d 1068, 1080 (N.D. Cal. Feb. 9, 2007) (citing *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 978 (4th Cir. 1990); *see also Lasercomb*, 911 F.2d at 975 ("The philosophy behind copyright … is that the public benefits from the efforts of authors to introduce new ideas and knowledge into the public domain.")). Because a copyright's grant is infused with public policy, as a corollary that public policy inherently favors supporting actual owners in the assertion of their validly-owned copyrights as opposed to invalidly registered copyrights.

Therefore, the Court **RECOMMENDS** entry of a permanent injunction prohibiting Defendant (and all its officers, agents, servants, employees, and attorneys, and all those in active concert or participation with any of them) from:

1) Claiming any copyright interest in the Game or its elements based on the Disputed Registrations or any other invalidly applied-for registrations;

2) Requesting the removal of the Game or any derivative work from any online platform based on the Disputed Registrations or any other invalidly applied-for or secured copyright interests claimed by Defendant to the Game or any of its elements; and

3) Entering into any agreement with any third party regarding the Disputed Registrations or any other invalidly applied-for or secured copyright interests claimed by Defendant to the Game or any of its elements.

### F.    Plaintiff is entitled to an award of attorney's fees and costs.

Plaintiff requests an award of its attorney's fees and costs. [Dkt. 1 at 14].  "Attorneys' fees are proper when a court grants a default judgment." *CNC Software, LLC v. Global Eng'ing LLC*, 2023 WL 3409463, at *8 (N.D. Cal. May 12, 2023) (quotation marks and citation omitted). The Copyright Act's provision for awarding fees applies to "any civil action under" the Act. 17 U.S.C.

United States District Court
Northern District of California

§ 505; *Doc's Dream, LLC v. Dolores Press, Inc.*, 959 F.3d 357, 363 (9th Cir. 2020). Any action that turns on the existence of a valid copyright and whether that copyright has been infringed sufficiently invokes the Copyright Act so as to allow for the discretionary award of attorney's fees. *See Doc's Dream, LLC*, 959 F.3d at 363.

Here, the egregiousness of Defendant's misconduct and its failure to defend this action warrant the Court to exercise its discretion and award reasonable fees.

The Ninth Circuit "has not mandated the lodestar method or comparison to market rates in calculating attorneys' fees under the Copyright Act." *Kourtis v. Cameron*, 358 Fed. Appx. 863, 868 (9th Cir. 2009). However, the lodestar method can be useful in determining the reasonableness of a fee request. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Plaintiff has provided billing records and an attorney declaration on the qualifications supporting the billing rates of the attorneys and paralegals involved. [Dkt. 52 at 3-4 and Exh. B].

Based on the Court's review of prevailing billing rates for intellectual property lawyers in the San Francisco Bay Area and this District (and further in light of the undersigned's over three decades of experience based in this Distrct and litigating primarily intellectual property cases), the Court finds that the billing rates of the attorneys and paralegal working for Plaintiff on this case are appropriate and reasonable in light of prevailing rates in this area ($675/hour, and later adjusted to $695/hour, for Attorney Rosenfeld, a partner with over twenty years of experience; $415/hour and later $440/hour for a senior associate with over eight years of experience; and $225/hour for two paralegals each with over ten years of experience). *See CNC Software*, 2023 WL 3409463 at *9 (collecting cases and finding reasonable rates of $575/hour for senior attorneys of 19 and 24 years' experience, $435/hour for an associate with four years' experience, and $195/hour for paralegals and legal assistants). Fee awards in intellectual property cases in this District have approved higher billing rates than those sought here. *See, e.g., Facebook, Inc. v. Holper*, No. 20-CV-06023-JCS, 2022 WL 17167958 (N.D. Cal. Sept. 27, 2022), *report and recommendation adopted as modified*, No. C 20-06023 WHA, 2022 WL 17169836 at *15 (N.D. Cal. Nov. 22, 2022) (finding reasonable rates of $530/hour for second-year associates, up to $725/hour for a senior associate, and up to

14

$1,165/hour for an office managing partner with thirty years of experience).

The Court further finds that the time spent by these timekeepers, as reflected in the billing records, is reasonable in view of the complexity of the international law, copyright, and procedural issues presented here. *See* Dkt. 52-2. In support of the fee request, Plaintiff here has filed a detailed billing chart summarizing the amount spent on each billed task. *See id.* A review of the billing chart does not suggest duplicative billing or an unreasonably high number of hours. *Id.*

However, "purely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989); *Hernandez v. Spring Charter Inc.*, 2020 WL 1171121, at *7 (N.D. Cal. Mar. 11, 2020) ("preparing proofs of service, processing records, posting letters for mail, photocopying, three-hole punching, internal filing, calendaring, and preparing the summons and complaint for filing have been found to be purely clerical tasks"). A review of the billing chart indicates that a number of time entries by paralegals are for purely clerical tasks, particularly calendaring. *See* Dkt. 52-2 at 5 (April 22, 2024 entry for $54 includes "update litigation calendar re: same"; May 10, 2024 entry of $20.25 for "Update litigation calendar"), at 6 (May 23, 2024 entry of $45.65 includes "update calendar accordingly"; May 23, 2024 entry for $45 includes "update calendar re: same"), at 8 (June 20, 2024 entry for $45 includes "update litigation calendar"), at 9 (July 29, 2024 entry for $45 includes "update litigation calendar re: same"; July 30, 2024 entry for $38.25 includes "Update litigation calendar re: setting of initial case management conference and deadline for case management statement"; August 9, 2024 entry for $22.50 states "Update litigation calendar re: 26(f) conference deadline"), at 12 (Oct. 31, 2024 entry for $31.50 includes "calendar related deadlines"; Nov. 19, 2024 entry for $27 includes "calendar related deadlines"), at 13 (Dec. 2, 2024 entry for $20.25 states "Update litigation calendar re: continued deadline to file case management statement"), at 14 (Jan. 23, 2025 entry for $94.50 includes "update litigation calendar re: all pending deadlines"; Jan. 24, 2025 entry for $20.25 includes "calendar related deadlines"; Feb. 11, 2025 entry for $27 includes "litigation calendar update re: same"), at 15 (Mar. 24, 2025 entry for $20.25 states "Update litigation calendar re: filing of motion for order referring issue of copyright validity to US copyright office"),

15

at 16 (Sept. 12, 2025 entry for $20.25 includes "calendar related deadlines", and Oct. 8, 2025 entry for $20.25 includes "update litigation calendar re: same").

Further, many if not most of these time entries include time billed for what appears to be filing documents in an electronic filing system for client documents used by the firm (described as "process and route" a document "into client document management system"). Time spent on internal filing has been held to be purely clerical and thus not awardable. *Hernandez*, 2020 WL 1171121, at *7. For these reasons, the undersigned **RECOMMENDS** disallowing an award of the fees associated with these calendaring time entries, which yields a total deduction for these entries of $596.90.

The chart also includes a cost dated February 26, 2025 identified as a "travel expense" of $470.62 for attorney Rosenfeld. [Dkt. 52-2 at 15]. Under Section 505, travel costs are recoverable and awardable if reasonable. *ExperExchange, Inc. v. Doculex, Inc.*, 2010 WL 1881484, at *12 (N.D. Cal. May 10, 2010) (reasonable travel costs allowable as costs under § 505). The undersigned notes that attorney Rosenfeld appears on the pleadings under his firm's San Francisco office, *see* Dkt. 1 at 1, and no details are provided in the billing chart for the requested $470.62 in travel costs (the itinerary or reasons for the travel). Further, Attorney Rosenfeld billed $2,082 (at a 50% discount) for his travel time on February 27, 2025 to and from San Francisco to attend the motion for default judgment hearing. [Dkt. 52-2 at 14]. Attorney Rosenfeld's contact information on the docket also lists his firm's San Francisco office. Because the record provides no basis on which to evaluate why Attorney Rosenfeld was billing for travelling to the courthouse when he appears to be locally based and identifies his office as being in San Francisco, the Court recommends disallowing both this travel cost ($470.62) and this time entry for travel time ($2,082), for a total deduction of $2,552.62.

The chart also includes as a cost an ACCURINT search for $24.75. *Id.* at 16. Under Section 505, online database search costs are recoverable and awardable if reasonable. *Yue v. Storage Tech. Corp.*, 2008 WL 4185835, at *6 (N.D. Cal. Sept. 5, 2008) (allowing "legal research" fees as costs under § 505). The undersigned finds this cost to be reasonable and, on that basis, recommends awarding it.

United States District Court
Northern District of California

Accordingly, the Court concludes that Plaintiff has presented a sufficient and reasonable lodestar for the work performed after deducting the time entries for clerical tasks ($596.90), and for the travel cost and travel time entry ($2,552.62). Per the above, Plaintiff's original fees and costs request of $64,676.22 is reduced by a total deduction of $3,149.52, for a revised total of $61,526.70. For these reasons, the Court **RECOMMENDS** awarding attorney's fees and costs to Plaintiff in the amount of $61,526.70.

**CONCLUSION**

Given the procedural posture of this case, the Defendant has not yet appeared and thus not all Parties have consented to Magistrate Judge jurisdiction in this matter. *See* 28 U.S.C. § 636. Accordingly, the Court **ORDERS** that this case be reassigned to a District Judge for resolution in light of this **REPORT AND RECOMMENDATION**.

The undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's Motion for Default Judgment on the grounds and for the reasons discussed herein.  [Dkt. 51].

The undersigned **RECOMMENDS** that the Court issue a declaration as discussed herein under the Federal Declaratory Judgment Act, 28 U.S.C. §2201.

The undersigned **RECOMMENDS** that the Court issue a permanent injunction against Defendant (and all its officers, agents, servants, employees, and attorneys, and all those in active concert or participation with any of them) on the terms discussed herein.

Finally, the Court **RECOMMENDS** that the Court award attorneys' fees and costs in favor of Plaintiff and against Defendant in the total amount of $61,526.70.

The Court **ORDERS** Plaintiff to promptly send a courtesy copy of this Report and Recommendation to Defendant's email addresses known by Plaintiff to have been used by Defendant, as identified in Dkt. 52 at ¶ 6, and to file a declaration attesting to having successfully emailed upon completion.

17

**If Defendant wishes to file an objection to this Report and Recommendation, Defendant must do so within fourteen (14) days of the date on which Defendant receives this Report and Recommendation.**

**IT IS SO ORDERED AND IT IS SO REPORTED AND RECOMMENDED.**

Dated: March 20, 2026

_____
PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California

18